**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
LUIS CASTELLANOS GOMEZ,          )
                                 )
                Petitioner,      )
                                 )
           v.                    )     1:12CV387
                                 )
ROBERT C. LEWIS,                 )
                                 )
                Respondent.      )
```

## MEMORANDUM OPINION AND ORDER

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 2.) On June 18, 2009, a jury in the Superior Court of Durham County found Petitioner guilty of conspiracy to traffic in cocaine by transportation, conspiracy to traffic in cocaine by possession, trafficking in marijuana by possession, and possession with intent to sell and deliver marijuana in cases 07CRS44610 through 44612. (Docket Entry 6-5 at 17-18 (verdicts); see also Docket Entry 2, ¶¶ 1-2, 4-6.) The trial court then consolidated the cocaine convictions and sentenced Petitioner to 175 to 219 months of imprisonment. (Docket Entry 6-5 at 21-22 (judgment); see also Docket Entry 2, ¶ 3.) The trial court also consolidated the marijuana convictions and sentenced Petitioner to a second, consecutive term of 35 to 42 months of imprisonment. (Docket Entry 6-5 at 23-24 (judgment); see also Docket Entry 2, ¶ 3.) The North Carolina Court of Appeals affirmed Petitioner's convictions and the North Carolina Supreme Court denied discretionary review. State v. Gomez, 209 N.C. App. 611, 705 S.E.2d 421, disc. review denied, 365 N.C. 352, 717 S.E.2d 746 (2011).

Petitioner subsequently filed a pro se motion for appropriate relief ("MAR") (Docket Entry 6-9; <u>see also</u> Docket Entry 2, ¶¶ 10, 11(a)(1) - (6)), which the trial court summarily denied (Docket Entry 6-10; <u>see also</u> Docket Entry 2, ¶ 11(a)(7) - (8)). Thereafter, the North Carolina Court of Appeals rejected Petitioner's certiorari petition. (Docket Entry 6-11 (certiorari petition); Docket Entry 6-13 (order denying certiorari).) Petitioner next submitted his instant Petition to this Court. (Docket Entry 2.) Respondent moved for summary judgment (Docket Entries 5, 6) and Petitioner has responded in opposition. (Docket Entry 10). The parties have consented to disposition of this case by a United States Magistrate Judge. (<u>See</u> Docket Entry 11.)

## I. Petitioner's Claims

Petitioner has raised four claims for relief in his Petition: (1) the trial court erred by allowing the playing of state's exhibit 52A-52J, a recording of intercepted telephone conversations in Spanish, where one juror spoke fluent Spanish (<u>see</u> Docket Entry 2 at 5); (2) Petitioner's trial counsel provided ineffective assistance in that he (a) seemed "reluctant" to try the case and to "build any meaningful defense," (b) advised Petitioner not to testify and threatened to withdraw if Petitioner chose to testify, and (c) admitted Petitioner's guilt in his closing arguments (<u>see id.</u> at 7); (3) Petitioner suffered violations of "his right to be free from double jeopardy" and "his [e]qual protection guarantees" by "convictions for more than one conspiracy" (<u>see id.</u> at 8); and (4) the trial court abused its discretion and violated the

Confrontation Clause by allowing a witness to offer an opinion about the controlled substance in question, and erred by "fail[ing] to dismiss the trafficking in [m]arijuana convictions due to the lack of evidence" (id. at 10).

## II. Habeas Standards

The Court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, "[b]efore [the] [C]ourt may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to [this] [C]ourt in a habeas petition. The exhaustion doctrine . . . is now codified at 28 U.S.C. § 2254(b)(1)." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see also 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, expressly waives the requirement.").

When a petitioner has exhausted state remedies, this Court must apply a highly deferential standard of review in connection with habeas claims "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d). More specifically, the Court may not grant relief unless a state court decision on the merits "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court

-3-

of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. To qualify as "contrary to" United States Supreme Court precedent, a state court decision either must arrive at "a conclusion opposite to that reached by [the United States Supreme] Court on a question of law" or "confront[] facts that are materially indistinguishable from a relevant [United States] Supreme Court precedent and arrive[] at a result opposite" to the United States Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of United States Supreme Court case law "if the state court identifies the correct governing legal rule from [the United States Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see also id. at 409-11 (explaining that "unreasonable" does not mean merely "incorrect" or "erroneous").

## III. Discussion

### Claim 1

In his first claim for relief, Petitioner asserts that the trial court violated Rule 403 of the North Carolina Rules of Evidence by allowing the jury to hear state's exhibit 52A-52J, a recording of intercepted telephone conversations in Spanish, when one of the jurors spoke Spanish fluently. (See Docket Entry 2 at 5.)[1] According to Petitioner, the trial court should have

---

[1] Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair
(continued...)

permitted the jury to view only an English-language, written translation of the recordings "without playing the Spanish recordings." (Docket Entry 10 at 3.) Petitioner contends that allowing the Spanish-speaking juror to hear the Spanish recordings prejudiced Petitioner, because that juror could "interpret the recording at variance with the certified translation." (Id.) Petitioner relies on United States v. Gutierrez, 367 F.3d 733, 736 (9th Cir. 2004), and United States v. Bailon-Santana, 429 F.3d 1258, 1260 (9th Cir. 2005), to argue that, "having allowed the playing of the Spanish recordings, the trial court abused its discretion in not instructing the jury, at the time [of] playing the recording, to rely solely on the court appointed written translation rather than any individual varying interpretation." (Id. at 3-4.) Petitioner alleges that the trial court's error "had substantial and injurious effect or influence in determining the jury's verdict" under Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), because the "intercepted Spanish telephone conversations" constituted "the strongest evidence linking [Petitioner] to any conspiracy." (Id.) Claim 1 provides no basis for relief.

Petitioner's first claim relies upon an alleged violation of a North Carolina evidentiary rule, a matter simply not cognizable on federal habeas review. See 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in

[1](...continued)
prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403.

behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."); see also Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus does not lie for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990))). "Normally, the admissibility of evidence . . . and instructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues. It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented." Spencer v. Murray, 5 F.3d 758, 762 (4th Cir. 1993) (citing Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960)). Petitioner has not shown either a federal constitutional violation or fundamental unfairness here, particularly where he has not alleged any differences between the Spanish recordings and the written translation in English.

Gutierrez and Bailon-Santana, non-habeas cases relied upon by Petitioner, do not aid his arguments. Neither case addresses whether a state trial court violates the federal constitution by permitting the playing of a foreign-language recording to a jury that includes a speaker of that foreign language; nor do the cases hold that the federal constitution requires the giving of the limiting instruction urged by Petitioner. See Gutierrez, 367 F.3d at 736 (encouraging federal district courts to give the limiting instruction but finding no error in its omission absent a showing

of prejudice); <u>Bailon-Santana</u>, 429 F.3d at 1260-61 (reversing conviction where the defendant's attorney, and not a court-certified interpreter, translated the jury waiver).

In sum, Claim 1 fails as non-cognizable on federal habeas review.

## <u>Claim 2</u>

Next, Petitioner contends that his trial counsel provided ineffective assistance in that he (a) seemed "reluctant" to try the case and to "build any meaningful defense," (b) advised Petitioner not to testify and threatened to withdraw if Petitioner chose to testify, and (c) admitted Petitioner's guilt without his consent in closing arguments. (<u>See</u> Docket Entry 2 at 7; <u>see also</u> Docket Entry 10 at 6.) In his opposition to summary judgment, Petitioner refers the Court to his MAR for explanation of his allegation that counsel seemed "reluctant to take [the] case and build any meaningful defense." (<u>See</u> Docket Entry 10 at 6.)[2] Petitioner offers no further facts in support of this claim.

Petitioner raised the substance of this claim in his MAR (<u>see</u> Docket Entry 6-9 at 2-7), and the trial court summarily denied the

_____

[2] Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts "explicitly requires that a petitioner summarize the facts supporting each of the alleged grounds for relief." <u>Adams v. Armontrout</u>, 897 F.2d 332, 333 (8th Cir. 1990). Thus, a habeas petitioner who generally references allegations raised in other case records and briefs "patently fail[s] to comply with Rule 2(c)." <u>Id.</u> Federal courts need not "sift through voluminous documents filed by habeas corpus petitioners in order to divine the grounds or facts which allegedly warrant relief." <u>Id.</u> (citing <u>Williams v. Kullman</u>, 722 F.2d 1048, 1051 (2d Cir. 1983)). The particularized facts which entitle a petitioner to habeas relief "must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review." <u>Id.</u> at 334 (emphasis added). The Court will conduct its review accordingly.

MAR on the merits (Docket Entry 6-10). In light of that adjudication on the merits, Section 2254(d)'s highly deferential standard governs this Court's review of Petitioner's instant parallel claim and the Court thus must consider whether the MAR court contradicted or unreasonably applied clearly established federal law.[3] The Fourth Circuit has provided guidance in regards to the clearly established law governing ineffective assistance claims:

> In order to establish an ineffective assistance of counsel claim . . ., [a petitioner must] establish that his "counsel's representation fell below an objective standard of reasonableness," measured by the "prevailing professional norms," [Strickland, 466 U.S. at 688], and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "Unless a [petitioner] makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687.
>
> In determining whether counsel's performance was deficient, "[i]t is all too tempting for a [petitioner] to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. Hence, "court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks omitted).
>
> Similarly, in evaluating whether [a petitioner] has shown actual prejudice from any such deficient performance, it is insufficient for the [petitioner] "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission

<hr>

[3] Petitioner does not contend that the MAR court relied on any unreasonably determined facts. (See Docket Entry 2 at 7; Docket Entry 10 at 6.)

-8-

of counsel would meet that test." Id. at 693. Rather,
a "reasonable probability" that the result would have
been different requires "a probability sufficient to
undermine confidence in the outcome." Id. at 694. When
challenging a conviction, "the question is whether there
is a reasonable probability that, absent the errors, the
factfinder would have had a reasonable doubt respecting
guilt." Id. at 695.

Fisher v. Lee, 215 F.3d 438, 446-47 (4th Cir. 2000) (internal

parallel citations omitted).

Moreover, the United States Supreme Court has cautioned that

"[s]urmounting Strickland's high bar is never an easy

task. . . . Even under de novo review, the standard for judging

counsel's representation is a most deferential one." Harrington v.

Richter, 562 U.S. 86, ___, 131 S. Ct. 770, 788 (2011) (internal

quotation marks omitted). Further, "[w]here the issue is whether

the state court has unreasonably applied Strickland standards to a

claim of ineffective assistance of counsel, . . . double deference

is required . . . ." Lavandera-Hernandez v. Terrell, No.

1:12-cv-553, 2013 WL 1314721, at *4 (M.D.N.C. Mar. 28, 2013)

(Schroeder, J.) (unpublished) (internal quotation marks omitted),

appeal dismissed, 539 F. App'x 159 (4th Cir. 2013); see also

Harrington, 562 U.S. at ___, 131 S. Ct. at 788 ("The standards

created by Strickland and § 2254(d) are both highly deferential and

when the two apply in tandem, review is doubly so." (internal

citations and quotation marks omitted)).

Accordingly, when the Court's examination of an ineffective

assistance claim proceeds under Section 2254(d), "[t]he question is

whether there is any reasonable argument that counsel satisfied

-9-

_Strickland_'s deferential standard." _Harrington_, 526 U.S. at ___, 131 S. Ct. at 788; _see also_ _Cullen v. Pinholster_, ___ U.S. ___, ___, 131 S. Ct. 1388, 1398 (2011) (observing that Section 2254(d) imposes "a difficult to meet and highly deferential standard . . ., which demands that state-court decisions be given the benefit of the doubt . . . [and that a] petitioner carries the burden of proof" (internal citations and quotation marks omitted)). In other words, "under the dual, overlapping lenses of [Section 2254(d)] and _Strickland_ [the Court must] ask[] the following question: Was the [MAR court]'s holding incorrect to a degree that its conclusion was so lacking in justification that it was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement?" _Moore v. Hardee_, 723 F.3d 488, 496 (4th Cir. 2013) (internal brackets, ellipses, and quotation marks omitted). Under this standard, the Court concludes that the MAR court's denial of this ineffective assistance claim did not contradict or unreasonably apply _Strickland_.

Petitioner's allegation that his trial counsel rendered deficient performance by displaying reluctance to try the case and to build a meaningful defense fails as conclusory and unsupported, _Nickerson v. Lee_, 971 F.2d 1125, 1136 (4th Cir. 1992) (recognizing that "[u]nsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing"), _abrogated on other grounds_, _Gray v. Netherland_, 518 U.S. 152, 165-66 (1996). Petitioner has provided no evidence, beyond his own unsupported allegations, detailing how his counsel demonstrated his reluctance or outlining

strategies counsel should have pursued to mount a more meaningful defense.

Petitioner's attempt to show ineffective assistance based on his trial counsel's alleged advice that Petitioner not testify similarly fails. Such advice, in and of itself, cannot form the basis of an ineffective assistance claim. Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002) (observing that "the advice provided by a criminal defense lawyer on whether his client should testify is 'a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance'" (quoting Hutchins v. Garrison, 724 F.2d 1425, 1436 (4th Cir. 1983)).

Moreover, the record before the state trial court belies Petitioner's assertion that trial counsel's alleged threat to withdraw if Petitioner chose to testify somehow prejudiced him. At the close of the state's evidence, the following colloquoy took place:

> [TRIAL] COURT: All right, at this time the jury has left the courtroom . . . . Will there be any evidence on behalf of the [Petitioner]?
>
> [DEFENSE COUNSEL]: No, Your Honor. After discussing this with [Petitioner], my understanding is he does not wish to present any evidence or wish to testify upon my advice. He is, of course, available for your inquiry as to this matter, Your Honor.
>
> [TRIAL] COURT: All right. [Petitioner], good afternoon, sir.
>
> [PETITIONER]: Good afternoon.
>
> . . .

| | |
|---|---|
| [TRIAL] COURT: | [Petitioner], you understand that you have the right to present evidence in this case? |
| [PETITIONER]: | Yes. |
| [TRIAL] COURT: | And do you understand that you yourself also have the right to present evidence by testifying personally? |
| [PETITIONER]: | Yes. |
| [TRIAL] COURT: | Have you discussed presenting evidence with your attorneys? |
| [PETITIONER]: | Yes. |
| [TRIAL] COURT: | And you also understand, of course, that you have the right not to testify? |
| [PETITIONER]: | Yes. |
| [TRIAL] COURT: | Do you understand that if you choose not to testify the Court will instruct the jury that they are not to infer anything from your decision not to testify? |
| [PETITIONER]: | Yes. |
| [TRIAL] COURT: | And your attorney has indicated to the Court that after your conversation with him about the law and your strategy in this trial that you have chosen or elected not to testify in this case, is that correct? |
| [PETITIONER]: | Yes. |
| [TRIAL] COURT: | All right, sir, thank you. You may have a seat. |

(Docket Entry 6-23 at 85; Docket Entry 6-24 at 1-2.)

Petitioner's <u>unsupported</u> allegation that his attorney threatened to withdraw if Petitioner testified cannot overcome the

presumption arising from the above-quoted colloquoy that Petitioner knowingly and voluntarily waived his right to testify. The United States Court of Appeals for the Sixth Circuit cogently stated the reasoning behind this presumption in an analogous case:

> A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel. When a defendant does not alert the trial court to a disagreement, waiver of the right to testify is presumed. Hence, because the trial record shows that [the petitioner] did not alert the trial court during trial to what he now claims was a disagreement with defense counsel about whether he should testify, he is presumed as a matter of law to have waived his right to testify. Indeed, a contrary rule would require courts to hold an evidentiary hearing any time a defendant who did not testify at trial filed an after-the-fact statement saying that he wanted to testify but was prevented from doing so. [The petitioner's] own self-serving affidavit, otherwise unsupported, is insufficient to rebut the presumption that he knowingly and voluntarily waived his right to testify.

Freeman v. Trombley, 483 F. App'x 51, 58-59 (6th Cir. 2012) (internal quotation marks, footnote and citations omitted); see also Saldo v. Crosby, 162 F. App'x 915, 917 (11th Cir. 2006) ("[The petitioner] first argues that he was denied effective assistance of counsel when trial counsel threatened to withdraw if he testified at trial. However, the trial record forecloses [the petitioner's] argument. Sworn statements on the record, as well as the judge's findings, pose a 'formidable barrier in any subsequent collateral proceedings.' Blackledge v. Allison, 431 U.S. 63, 74-75 (1977). [The petitioner] initially denied that he had been coerced into not testifying but subsequently recanted those statements. After giving [the petitioner] an opportunity to testify, the trial court

found that [he] was not coerced.  These facts alone suffice to subject [the petitioner's] claim to summary dismissal."); <u>Rockett v. Secretary, Dep't of Corrs.</u>, No. 8:08-cv-1417-T-23EAJ, 2014 WL 3809146, at *13 (M.D. Fla. Aug. 1, 2014) (unpublished) ("To prevail on an ineffective assistance of counsel claim alleging that counsel prevented a petitioner from testifying, the petitioner must produce more than a bare, unsubstantiated allegation to satisfy <u>Strickland</u>'s requirements.  <u>Underwood v. Clark</u>, 939 F.2d 473, 476 (7th Cir. 1991) ('[I]n a subsequent collateral attack on the conviction [alleging ineffective assistance for counseling the defendant not to testify], the defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand.'").

Furthermore, the trial court record simply does not support Petitioner's allegation that his trial counsel admitted Petitioner's guilt during closing arguments without Petitioner's consent.  Petitioner cites to the following portion of his counsel's closing argument as evidence of this non-consensual admission of guilt:

> I'd like to first of all talk about any credible evidence linking [Petitioner] to this.  And I'm going to tell you right now, based on everything that you have heard, this is what this comes down to.  Yeah, he was around here but you know something, people in this world are dupes.  They are hired to be gofers; and ultimately in an organization like La Familia that [the prosecutor] has built here for you, there is always going to be a fall guy.  Ladies and gentlemen, this man is the dupe, the fall guy, the gofer, the guy that goes and gets the coffee in Hollywood or in California for the big movie producer.  He's not involved

-14-

in the producer snorting the cocaine or smoking the pot
but he goes and gets the coffee.  He goes and does what
he is told to do and that's what this evidence merely
shows.

(Docket Entry 6-24 at 35-36.)

The charges against Petitioner required the jury to find
knowing possession of the controlled substance in question (or, in
the case of the conspiracy charges, an agreement to engage in
knowing possession or knowing transportation of the substances).
(See id. at 56-60.)  Far from admitting guilt, counsel's arguments
bolstered the overall strategy of his closing arguments, i.e.,
asserting that Petitioner played the role of a mere gofer, whom the
actual drug dealers did not entrust with drugs or money, and that
Petitioner lacked the requisite power and intent to control the
disposition of the controlled substances to satisfy the elements of
the offenses charged.  (See, e.g., id. at 40, 45, 48, 49.)  In the
face of significant evidence placing Petitioner at the various
locations of the drug transactions, including photographs and
recorded telephone conversations (see, e.g., Docket Entry 6-18 at
6-100; Docket Entry 6-19; Docket Entry 6-20 at 1-68; Docket Entry
6-21 at 20-116; Docket Entry 6-22 at 1-80), Petitioner's counsel
employed a sound strategy.  Petitioner's argument fails to show
deficient performance by counsel, much less a basis for relief
under Section 2254(d).

In conclusion, the MAR court did not misapply or contradict
Strickland in denying Petitioner's parallel ineffective assistance
claim.

**Claim 3**

Next, Petitioner contends that his conviction of more than one conspiracy violated his "right to be free from double jeopardy" and "his [e]qual protection guarantees." (Docket Entry 2 at 8.) According to Petitioner, the Court should apply the "totality of the circumstances" test espoused in United States v. Mackins, 315 F.3d 399, 411 (4th Cir. 2003), to determine whether his conviction of "successive" conspiracies constituted a double jeopardy violation. (Docket Entry 10 at 7.) That test involves consideration of "(1) the time periods covered by the alleged conspiracies; (2) the places where the conspiracies are alleged to have occurred; (3) the persons charged as co-conspirators; (4) the overt acts alleged to have been committed in furtherance of the conspiracies, or any other descriptions of the offenses charged which indicate the nature and scope of the activities being prosecuted; and (5) the substantive statutes alleged to have been violated." Mackins, 315 F.3d at 411 (quoting United States v. Ragins, 840 F.2d 1184, 1189 (4th Cir. 1988)). Petitioner's claim provides no basis for habeas relief.

Petitioner raised the substance of this claim in his MAR (see Docket Entry 6-9 at 8), and that court summarily denied the MAR on its merits (see Docket Entry 6-10). As such, the undersigned will apply Section 2254(d)'s highly deferential standard of review to consider whether the MAR court contradicted or unreasonably applied

clearly established federal law as determined by the United States
Supreme Court in denying Petitioner's parallel claim.[4]

At the outset of the analysis, Petitioner's reliance on
Mackins misses the mark in two respects.  First, under Section
2254(d), Petitioner must demonstrate that the MAR court's decision
contradicted or unreasonably applied clearly established federal
law as determined by the United States Supreme Court.  However, the
United States Court of Appeals for the Fourth Circuit decided
Mackins.  Accordingly, the undersigned need not consider whether
the MAR court unreasonably applied Mackins in denying Petitioner's
claim.

Second, the multi-factor test in Mackins applies to
"successive" conspiracy convictions rather than the imposition of
multiple sentences for the same offense in a single criminal trial.
Ragins, 840 F.2d at 1187-89 (recognizing United States v.
MacDougall, 790 F.2d 1135, 1144 (4th Cir. 1986), as the case in
which the Fourth Circuit adopted the "multi-pronged 'totality of
the circumstances' test" applied to successive conspiracy
prosecutions).  Petitioner here did not face successive conspiracy
convictions, i.e., the state did not prosecute him for one
conspiracy, and then, at some later time, prosecute him for another
conspiracy involving some of the same facts or evidence.  Rather,
the state tried Petitioner on two different conspiracy charges in

_____

[4] Again, Petitioner has not argued that any unreasonable fact-finding
occurred.  (See Docket Entry 2 at 8; Docket Entry 10 at 6-8.)

-17-

<u>one</u> trial – conspiracy to traffic in cocaine by transportation and conspiracy to traffic in cocaine by possession.[5]

In <u>Blockburger v. United States</u>, 284 U.S. 299, 304 (1932), the Supreme Court announced a test for determining whether two separate crimes punished the same offense:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

The Supreme Court subsequently applied the <u>Blockburger</u> test to a claim of double jeopardy involving multiple conspiracies in <u>Albernaz v. United States</u>, 450 U.S. 333 (1981). The Supreme Court concluded that conspiracy to import marijuana and conspiracy to distribute marijuana did not proscribe the same offense because each crime "'require[d] proof of a fact [that] the other does not.'" <u>Albernaz</u>, 450 U.S. at 339 (quoting <u>Blockburger</u>, 284 U.S. at 304). Then, the Supreme Court concluded that "cumulative punishments can <u>presumptively</u> be assessed after conviction for two offenses that are not the 'same' under <u>Blockburger</u>." <u>Missouri v. Hunter</u>, 459 U.S. 359, 367 (1983) (citing <u>American Tobacco Co. v. United States</u>, 328 U.S. 781 (1946)). In so doing, the Supreme Court emphasized that even where two charges proscribe the same

_____

[5] <u>Mackins</u> does not apply here for a third reason. That case involved a direct appeal of judgments and sentences issued by a federal district court and, thus, provides a test for federal courts to apply at trial and on direct appeal to determine whether multiple conspiracy charges violate the federal Double Jeopardy Clause. <u>Mackins</u> does not address the issue confronting the undersigned on habeas review, i.e., whether the MAR court unreasonably applied or contradicted clearly established law as determined by the United States Supreme Court in denying Petitioner's double jeopardy claim.

conduct under Blockburger, if a state legislature has specifically
authorized cumulative punishment for those charges, "a court's task
of statutory construction is at an end and the prosecutor may seek
and the trial court or jury may impose cumulative punishment under
such statutes in a single trial."  Hunter, 459 U.S. at 369; see
also Thomas v. Warden, 683 F.2d 83, 85 (4th Cir. 1982) ("Where the
[double jeopardy] claim is made in relation to state offenses,
federal courts are essentially bound by state court interpretations
of state legislative intent.").

In light of the above-quoted authority, the undersigned finds,
under Section 2254(d), that the MAR court did not unreasonably
apply or contradict that clearly established federal law in denying
Petitioner's parallel double jeopardy claim.  The state trial court
instructed the jury that to convict Petitioner of conspiring to
commit trafficking in cocaine by possession, they must find the
following elements beyond a reasonable doubt:

> First, that [Petitioner] and [his charged co-
> conspirators] entered into an agreement.

> Second, that the agreement was to commit trafficking in
> cocaine by possession.

> Trafficking in cocaine by possession is:

>> First, that [Petitioner] knowingly possessed
>> cocaine.  A person possesses cocaine if he is
>> aware of its presence and has either by
>> himself or together with others both the power
>> and intent to control the disposition or use
>> of that substance.

>> And Second, that the amount of cocaine which
>> [Petitioner] possessed was more than 400
>> grams.

> And Third, that [Petitioner] and [his charged
> co-conspirators] intended that the agreement
> be carried out at the time it was made.

(Docket Entry 6-24 at 58-59 (emphasis added).)  The trial court
then instructed the jurors that conviction of conspiracy to traffic
in cocaine by transportation requires the state to prove the
following elements beyond a reasonable doubt:

> First, that [Petitioner] and [his charged co-
> conspirators] entered into an agreement.
>
> Second, that the agreement was to commit trafficking in
> cocaine <u>by transportation</u>.
>
> Trafficking in cocaine by transportation is:
>
>> First, <u>that [Petitioner] by himself or
>> together with others knowingly transported
>> cocaine from one place to another</u>.
>>
>> And Second, that the amount of cocaine which
>> [Petitioner] transported was more than 400
>> grams.
>>
>> And Third, that [Petitioner] and [his charged
>> co-conspirators] intended that the agreement
>> be carried out at the time it was made.

(<u>Id.</u> at 60 (emphasis added).)  As the emphasized text in the above-
quoted jury instructions shows, each conspiracy required proof of
an element that the other conspiracy did not, i.e., an agreement to
possess cocaine and to transport cocaine, respectively.
Accordingly, under <u>Blockburger</u>, Petitioner's conspiracy convictions
do not punish the same conduct and no double jeopardy problem
arises.

Assuming, <u>arguendo</u>, that the two conspiracies at issue in this
case did proscribe the same conduct under <u>Blockburger</u>, Petitioner's
instant claim still fails.  <u>Hunter</u> instructs that, regardless of

the outcome under the Blockburger test, if a state legislature has authorized cumulative punishment for the two offenses at issue, the double jeopardy analysis ends. North Carolina's appellate courts have implicitly recognized that the state legislature authorized conspiracy to traffic by possession and conspiracy to traffic by transportation to constitute separate offenses, as those courts have not vacated multiple trafficking conspiracy convictions on that ground. See, e.g., State v. Clark, No. COA14-188, 2014 WL 6432991, at *4 (Nov. 18, 2014) (unpublished) (finding evidence of only one agreement and vacating conspiracy to traffic by possession conviction); State v. Howell, 169 N.C. App. 741, 749, 611 S.E.2d 200, 205-06 (2005) (same).

Instead, the state courts follow "the legal doctrine that number of agreements, not the number of substantive crimes nor the number of overt acts, dictates the number of conspiracies." Sanderson v. Rice, 777 F.2d 902, 908 (4th Cir. 1985) (citing State v. Gibson, 233 N.C. 691, 65 S.E.2d 508 (1951); State v. Rozier, 69 N.C. App. 38, 52, 316 S.E.2d 893, 902 (1984)). In addition, "factors such as time intervals, participants, objectives, and number of meetings all must be considered." Rozier, 69 N.C. App. at 52. Thus, under Hunter, whether the MAR court correctly applied that doctrine "may not be challenged here." Mouzon v. Rozum, Civ. No. 08-783, 2009 WL 3734131, at *10 (E.D. Pa. Nov. 5, 2009) (unpublished) ("[T]he multifactor state law totality of the circumstances analysis used by the [state appellate court] for distinguishing between single and multiple conspiracies in the face

of a defendant's double jeopardy claim is a matter of state law. A federal court involved in habeas review does not analyze whether the trial court's procedure adhered to . . . state law; instead, we are limited to determining whether a conviction violated the Constitution, laws, or treaties of the United States." (citing Estelle, 502 U.S. at 67-68)).

In sum, the MAR court did not unreasonably apply or contradict Blockburger and its progeny in rejecting Petitioner's double jeopardy claim.

Finally, even if Petitioner's convictions for conspiracy to traffic in cocaine by possession and conspiracy to traffic in cocaine by transportation in one trial raised double jeopardy concerns, which the undersigned has already determined they do not, Petitioner's claim warrants no habeas relief because he cannot show that the error had "substantial and injurious effect" resulting in "actual prejudice," Brecht, 507 U.S. at 637. Here, although the jury convicted Petitioner of both conspiracies, the trial court consolidated the conspiracy judgments and imposed but one sentence of 175 to 219 months' imprisonment. (Docket Entry 6-5 at 21-22.) Thus, Petitioner cannot show "actual prejudice" arising from his conspiracy convictions and his claim fails on its merits. See Jones v. Thomas, 491 U.S. 376, 381 (1989) (finding no prejudice in a pre-Brecht case where state trial "court's alteration of [the] respondent's sentence to a single term for felony murder with credit for time served provided suitable protection of his double jeopardy rights" and noting that the Double Jeopardy Clause . . .

[does not] exist[] to provide unjustified windfalls"); <u>Smith v. Mitchell</u>, 348 F.3d 177, 210 (6th Cir. 2003) (rejecting the petitioner's argument that imposition of multiple death sentences for a single homicide violated double jeopardy as harmless error under <u>Brecht</u> because the court made the sentences concurrent); <u>Schrier v. Iowa</u>, 941 F.2d 647, 650 (8th Cir. 1991) (holding that court need not address the petitioner's double jeopardy habeas claim because the judge imposed concurrent sentences); <u>Fuentes v. Superintendent, Great Meadows Corr. Facility</u>, No. 04-CV-0737 (JS), 2009 WL 2424206, at *6 (E.D.N.Y. Aug. 5, 2009) (unpublished) (finding that any possible double jeopardy error did not have a "substantial and injurious effect" under <u>Brecht</u> because the appellate court "modified the petitioner's sentence by requiring the sentences for both assault counts to run concurrently").[6]

**Claim 4**

Petitioner's fourth claim for relief asserts two discrete trial court errors: (1) the trial court violated the Confrontation Clause of the Sixth Amendment by allowing Agent Kyle York to offer an opinion regarding the composition of the controlled substance at issue; and (2) the trial court erred by denying Petitioner's motion to dismiss the marijuana convictions for "lack of evidence."

---

[6] Petitioner attempts to show prejudice arising from his conviction of both conspiracies by arguing that because of such convictions, "the trial court was more reluctant in running the other [t]rafficking in marijuana charge[s] concurrently." (Docket Entry 10 at 8.) Petitioner's argument consists of unsupported speculation and thus does not suffice. <u>Nickerson</u>, 971 F.2d at 1136 ("Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."), <u>abrogated on other grounds</u>, <u>Gray</u>, 518 U.S. at 165-66.

(Docket Entry 2 at 10.)  Neither of these alleged errors entitles Petitioner to habeas relief.

Claim 4 first fails as conclusory and unsupported.  A petition under Section 2254 "must: (1) specify all the grounds for relief available to the petitioner; [and] (2) state the facts supporting each ground[.]"  Rule 2(c), Rules Governing Section 2254 Cases (emphasis added).  "'[I]n order to substantially comply with the Section 2254 Rule 2(c), a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified.  These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review.'"  Bullard v. Chavis, No. 96-7614, 153 F.3d 719 (table), 1998 WL 480727, at *2 (4th Cir. Aug. 6, 1998) (unpublished) (quoting with approval Adams v. Armontrout, 897 F.2d 332, 334 (8th Cir. 1990)) (emphasis added); see also Mayle v. Felix, 545 U.S. 644, 655 (2005) (explaining that, compared to Federal Rule of Civil Procedure 8(a), "Habeas Corpus Rule 2(c) is more demanding"); McFarland v. Scott, 512 U.S. 849, 856 (1994) ("Habeas corpus petitions must meet heightened pleading requirements . . . ."); Aubut v. Maine, 431 F.2d 688, 689 (1st Cir. 1970) ("We do not accept 'notice' pleading in habeas corpus proceedings."); Henderson v. Cate, No. 06CV1545JAH(WMC), 2009 WL 3126295, at *7 (S.D. Cal. Sept. 24, 2009) (unpublished) ("In order to validly state a claim for habeas relief, [a] [p]etitioner must set forth sufficient facts to support each and every claim. . . .

Such a requirement reflects a concern for the respect of state trial court adjudication by imposing on the habeas petitioner the burden of alleging and proving primary facts which justify federal intervention in a state-resolved case.").

Here, the Petition thus does not describe in any meaningful way the specific testimony of Agent York to which Petitioner objects, any other facts which show why the trial court's admission of that testimony violated the Confrontation Clause, or any facts detailing the insufficiency of the evidence supporting his marijuana convictions, all contrary to the requirements of Section 2254 Rule 2(c). Claim 4 therefore fails as a matter of law.

Moreover, Petitioner's attempt to provide supporting facts in response to Respondent's summary judgment motion (see Docket Entry 10 at 8-13) cannot save the claim because a summary judgment response (like a traverse) "is not the proper place to raise new facts. Under Rule 2(c) of the Rules Governing Section 2254 Cases, a petitioner must set forth in his petition 'the facts supporting each ground' for relief." Velasquez v. Gipson, No. SA CV 12-1078(JSL), 2013 WL 3381371, at *9 n.4 (C.D. Cal. July 8, 2013) (unpublished) (emphasis added); see also Quackenbush v. Tilton, No. 07CV413W(WMC), 2008 WL 183710, at *6 (S.D. Cal. Jan. 18, 2008) (unpublished) ("Facts must be stated, *in the petition*, with sufficient detail to enable the Court to determine, from the face of the petition, whether further habeas corpus review is warranted." (emphasis in original)). Claim 4 thus falls short.

Alternatively, a procedural bar applies to the Confrontation Clause aspects of this claim, because Petitioner did not object to Agent York's testimony at trial. (<u>See</u> Docket Entry 6-21 at 91-92.)[7] Where a state-court criminal defendant (like Petitioner) fails to make a proper, contemporaneous objection at trial and thus can secure at most plain error review on direct appeal, this Court is "procedurally barred from considering th[at] claim, unless [that defendant] can show cause and prejudice for his failure to preserve the issue by a timely objection." <u>Daniels v. Lee</u>, 316 F.3d 477, 487 (4th Cir. 2003).[8]

Petitioner appears to argue in opposition to summary judgment that cause exists to excuse this default. (Docket Entry 10 at 8-11.) According to Petitioner, "an objection in open court would have had very little impact" due to the requirement in N.C. Gen.

---

[7] The record also does not reflect that Petitioner objected to the State Bureau of Investigation ("SBI") laboratory report identifying the controlled substance in question as cocaine, and about which Agent York testified (<u>see</u> Docket Entry 6-21 at 89-91), in advance of the trial. Pursuant to N.C. Gen. Stat. § 90-95(g), an objection to an SBI lab report must be made "at least five business days before the proceeding." In the absence of such an objection, the report "may be admitted into evidence without the testimony of the analyst." Thus, Petitioner's claim that the trial court's admission of the SBI report through the testimony of Agent York violates the Confrontation Clause because Agent York did not prepare the report, falls short as well.

[8] Respondent alleged that a procedural bar applied to Petitioner's Confrontation Clause claim, but based that bar on the possibility that the MAR court denied Petitioner's parallel claim on procedural default grounds. (Docket Entry 6 at 22.) Nevertheless, the Court finds that the interests of comity and judicial efficiency warrant sua sponte enforcement of the applicable procedural bar without hearing further from the parties, given the obvious nature of the default, the absence of any cause that plausibly might excuse the default, and Petitioner's failure to comply with Section 2254 Rule 2(c) in originally presenting Claim 4. <u>See</u> <u>Yeatts v. Angelone</u>, 166 F.3d 255, 261-62 (4th Cir. 1999) (recognizing that "interests of comity may counsel a federal habeas court to ignore the failure of a state to assert a defense founded upon procedural default," particularly where (1) "judicial efficiency is advanced," such as when "a petitioner obviously has defaulted," and (2) the record does not reflect that "a state intentionally has declined to pursue the defense").

-26-

Stat. § 90-95(g) that he must object to an SBI laboratory report at least five business days before trial or the report may be admitted without the testimony of the analyst. (Id. at 9.) Petitioner contends that Section 90-95(g) "unfairly tilted" the "[s]cale of [j]ustice" against him "from the very beginning" (id. at 8), and violates "the protection guarantees of [t]he Confrontation Clause of the Sixth Amendment . . . ." (id. at 9.)

However, Petitioner's belated expression of this argument in his summary judgment response violates Section 2254 Rule 2(c)'s requirement that he set out all grounds for relief in his Petition. In any event, Petitioner (who was represented by counsel throughout his trial) has not shown how Section 90-95(g)'s requirement of a pre-trial objection constituted an unfair procedural barrier. "Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced." Lundgren v. Mitchell, 440 F.3d 754, 764 (6th Cir. 2006); see also Murray v. Carrier, 477 U.S. 478, 488 (1986) (instructing that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule"); Hartman v. Bagley, 492 F.3d 347, 358 (6th Cir. 2007) (holding that to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him.").

In sum, Petitioner cannot secure habeas relief via Claim 4.

## IV. Conclusion

Petitioner has not shown a valid basis for habeas relief.

**IT IS THEREFORE ORDERED** that Respondent's Motion for Summary Judgment (Docket Entry 5) is **GRANTED**, that the Petition (Docket Entry 2) is **DENIED**, and that Judgment be entered dismissing this action without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

December 8, 2014